IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ARIELLE LOPEZ,

    Plaintiff,

    v.                                                              Civ. No. 21-220 SCY/LF

BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF BERNALILLO o/b/o
BERNALILLO COUNTY HOUSING
DEPARTMENT,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART SUMMARY JUDGMENT
AND REMANDING TO STATE COURT[1]**

Defendant Board of County Commissioners of the County of Bernalillo mailed a notice to Plaintiff Arielle Lopez that it intended to terminate her from its Community Connections Housing Voucher Program, a program that was providing her rent subsidies. Plaintiff claims that Defendant knew she did not receive this pre-termination notice when it terminated her from the program. Plaintiff therefore argues that Defendant did not provide her with adequate process of law.

Plaintiff presents no evidence that Defendant knew she did not receive the notice. Plaintiff raises no other theories supporting her due process claim. The Court therefore grants Defendant's Motion for Summary Judgment (Doc. 30) as to the federal claims. The Court declines supplemental jurisdiction over the state-law claims and remands them to state court.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 6, 7, 8.

**BACKGROUND**

A.      Defendant's Facts[2]

In May 2020, Plaintiff became a participant in the Community Connections Housing Voucher Program ("CCSH"), a program operated by Defendant. CCSH provides services and housing to a population of homeless or precariously housed persons to assist them in reintegrating into the community. Upon entry in the program, Plaintiff agreed that she would participate in community based supportive services as recommended by her case manager and team. In exchange, she received a rental subsidy. She understood that non-compliance with the terms of the program could result in her termination from the program.

Plaintiff knew that in order to continue receiving rent subsidies through CCSH she had to remain in a behavioral health program. According to Plaintiff's behavioral health provider, the University of New Mexico Hospital ("UNMH"), Plaintiff repeatedly failed to keep her appointments with her providers. UNMH discharged her from its services.[3] Plaintiff knew that UNMH discharged her from its program. Plaintiff contacted UNMH as soon as they discharged her, but UNMH informed Plaintiff that it had already notified Defendant of the discharge.

By letter dated August 21, 2022, Defendant notified Plaintiff that her rent assistance would be terminated. Doc. 30-10 ("pre-termination letter"). The pre-termination letter informed Plaintiff of the basis of the proposed termination and of her right to request an informal hearing. *Id.* The letter stated that Plaintiff was required to submit a request for an informal hearing in

---

[2] Unless otherwise indicated, the facts in this section are taken from Defendant's motion for summary judgment, Doc. 30 at 2-20, and are undisputed.

[3] Plaintiff disputes that she failed to keep appointments, Doc. 33 at 6 ¶ 23, but she does not dispute that UNMH discharged her from its program. Whether Plaintiff did or did not fail to keep appointments with UNMH is not material to her procedural-due-process claim against Defendant.

writing or in person by September 4, 2020. *Id.* The letter also informed Plaintiff that if she failed to request an informal hearing, she would be terminated from housing. *Id.* Defendant mailed this letter to Plaintiff via both certified and regular mail on August 21, 2020 to the correct mailing address for Plaintiff's apartment.[4] The certified mail was returned to BCHS on August 29, 2020 with the note "Return to Sender" and "Not Deliverable as Addressed."[5]

It is undisputed that Plaintiff lived at this apartment in Albuquerque from July 2020 until July 31, 2021. Plaintiff never contacted Defendant to report a different address other than her apartment. Plaintiff never provided Defendant her email address. Plaintiff never received mail at any address other than her Albuquerque apartment during August and September 2020.

Plaintiff failed to request an informal hearing by September 4. By letter dated September 9, 2020, Defendant notified Plaintiff of her noncompliance with CCSH policy; that she had been granted ten days to request an informal hearing; that Plaintiff had failed to request an informal hearing; and that based on her not requesting an informal hearing and violating program rules, her CCSH housing voucher participation was terminated, effective October 31, 2020.

---

[4] For evidentiary support, Defendant provides a sworn affidavit from the CCSH program manager, Leonette Archuleta, stating that the letter was sent via certified and regular mail, Doc. 30-1; and Plaintiff's deposition testimony confirming the address was her correct mailing address, Doc. 30-4 at 5. In her response, Plaintiff purports to dispute this fact. Doc. 33 at 7 ¶ 36. Plaintiff cites no record evidence and does not otherwise explain the basis of her dispute. *Id.* The Court is not itself aware of any evidence in the record supporting Plaintiff's purported dispute. As such, the Court considers Defendant's fact undisputed. D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 856 (10th Cir. 1999) (affirming a grant of summary judgment based on deemed-admitted facts, where the non-movants did not "comply with the requirement that they specifically controvert the defendants' fact statements with adequate and accurate record support").

[5] Exhibit I containing the returned letter is attached to Defendant's Errata Sheet at Doc. 32-1.

("termination letter"). Doc. 30-12. This letter was mailed to Plaintiff by both certified and regular mail to Plaintiff's correct mailing address.

Unfortunately, Plaintiff did not have a key to the mailbox for her apartment for about two months, from July until early September 2020. Plaintiff was in the hospital having a baby and dealing with related complications from August 29, 2020 to September 5, 2020.[6] Following her release from the hospital, Plaintiff obtained a mail key and received her mail, which included both the pre-termination notice and the termination notice. But the deadline to request an informal hearing had already passed. Plaintiff did not contact Defendant until September 10, 2020.

Plaintiff has not received behavioral health treatment from UNMH since September 2020. Plaintiff has not been seen by a behavioral health provider since December 2020 and has made no attempts in 2021 to receive treatment from any behavioral health provider. Defendant has not accepted Plaintiff back into the CCSH program.

B.   Plaintiff's Additional Facts

In support of her opposition to the motion for summary judgment, Plaintiff states that she did not receive the August 21, 2020 pre-termination letter until after the deadline to request an informal hearing had already passed. Doc. 33 at 9 ¶ A. Additionally, the certified copy of the August 21, 2020 pre-termination letter was returned to BCHD as "not deliverable as addressed" on or about August 29, 2020—prior to the expiration of the September 4, 2020 deadline to request an informal hearing contained in the notice. *Id.* ¶ B. Defendant does not dispute these

---

[6] As Defendant points out, the hospital admission date of August 29 means that eight days elapsed after Defendant mailed the pre-termination notice and before Plaintiff went to the hospital. Thus, the notice was mailed to Plaintiff at the address for her residence when Plaintiff was present. Doc. 30 at 16.

facts. Doc. 40 at 2.

Plaintiff states that "BCHD was aware that Plaintiff did not timely receive the August 21, 2020 notice of proposed termination." Doc. 33 at 9 ¶ C. In support, Plaintiff cites to the notice of returned mail for the *certified* letter. *Id.* Defendant correctly points out that this does not establish notice that the *regular* letter was returned. Doc. 40 at 2. And it had not been returned. It was sitting in Plaintiff's mailbox, which she was not checking initially because she did not have a key and then because she was in the hospital. Plaintiff's second citation to support this fact is to Defendant's Exhibit J, Defendant's note history for Plaintiff's file. Doc. 30-11. This exhibit shows that Defendant knew, as of September 10, 2021, that Plaintiff claimed she never received the pre-termination notice. *Id.* at 2. But by September 10, Plaintiff had already missed the deadline to request an informal hearing and had been terminated from CCSH.

The Court therefore does not accept Plaintiff's proffered fact that Defendant was aware, prior to terminating her from the program, that Plaintiff did not receive the pre-termination notice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. . . . [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

Finally, although "Plaintiff does not dispute that she did not contact Defendant to report a different address," Plaintiff does dispute that Defendant did not have another address on file for her. Doc. 33 at 7 ¶ 38. Plaintiff further asserts that Defendant had alternate contact information that it did not use after the certified letter was returned. In support, Plaintiff attaches a form Plaintiff filled out with her father's address in May 2020. The form appears to relate to the

5

federal U.S. Department of Housing and Urban Development. Doc. 33 at 7 ¶ 38 and 9 ¶ C; Doc. 33-5. On its face, this form appears to have nothing to do with Defendant, a local county, and Plaintiff does not provide any further authentication, explanation, or evidence linking this form to Defendant. Therefore, the Court does not accept Plaintiff's proposed fact that Defendant had alternate contact information for her.

      C.      <u>Procedural history</u>

Plaintiff filed her complaint in state court on January 27, 2021. Doc. 1-2 ("Compl."). The complaint brought three counts: (1) denial of due process under the state and federal constitutions by failure to provide sufficient notice (Count I); denial of due process under the state and federal constitutions based on abuse of discretion and arbitrary action (Count II); and request for declaratory and injunctive relief (Count III). Defendant removed the case to federal court on March 11, 2021, citing federal question jurisdiction because the complaint invoked the federal constitution and 42 U.S.C. § 1983. Doc. 1.

After the parties conducted discovery, Defendant timely filed the instant Motion for Summary Judgment on October 29, 2021. Doc. 30. Plaintiff filed her response on November 12, 2021. Doc. 33. Defendant filed a reply on December 7, 2021. Doc. 40. Briefing is complete and the motion is ready for decision.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if

under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the court must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted).

      Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.* But, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. When "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is "entitled to a judgment as a matter of law." *Id.* at 323. Therefore, "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The movant may show an entitlement to summary judgment "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

**DISCUSSION**

The Court's resolution of the undisputed facts makes this case a simple one: Defendant provided Plaintiff with reasonable notice that consisted of sending a letter to her current known address by regular and certified mail. Defendant did not know that Plaintiff did not receive the letter when it terminated her from the program. Therefore, Plaintiff's only legal argument—that notice is legally insufficient if Defendant knows notice was never received—is not applicable to this case. Defendant is entitled to summary judgment.

A. Notice

Defendant moves for summary judgment, arguing that it provided Plaintiff with all the process of law to which she was due: notice and an opportunity to be heard. Doc. 30 at 14. The constitutional guarantee of due process requires basic procedural safeguards in hearings involving the deprivation of public benefits. *Goldberg v. Kelly*, 397 U.S. 254, 261 (1970). One of these safeguard requirements is "that a recipient have timely and adequate notice detailing the reasons for a proposed termination." *Id.* at 267-68. This issue is at the heart of the current case, given that Plaintiff's central claim is that she did not receive the pre-termination notice.

To meet due process requirements, a notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and "must be of such nature as reasonably to convey the required information." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983).

"[D]ue process does not require that the interested party actually receive the notice."

*Securities Investor Protection Corp. v. Stellatos* (*In re Blinder, Robinson & Co.*), 124 F.3d 1238, 1243 (10th Cir. 1997) (collecting cases). Plaintiff acknowledges the mailbox rule—a rebuttable presumption that a recipient received a mailed letter if the sender proves that the letter was properly addressed and the letter was deposited in the mailbox. Doc. 33 at 11. Plaintiff argues that she has overcome the presumption in this case because "Defendant was aware that there was nonreceipt of the notice prior to the expiration of the time allowed for Plaintiff to request an informal hearing on the termination of her voucher." *Id.* "Additionally, Defendant had an alternate address on record for Plaintiff in the event it was unable to contact her." *Id.* Since Defendant knew better, Plaintiff argues, "the notice was not reasonably calculated to apprise Plaintiff of the proposed termination of her voucher." *Id.*

The Court need not decide whether Plaintiff's legal theory is correct, i.e., whether Defendant would have violated due process if it had terminated Plaintiff from the program knowing she had not received the pre-termination notice, without trying to reach her with any alternate contact information. The Court has found that Plaintiff did not support her assertions of fact with competent evidence on summary judgment. The only evidence in the record is that Defendant sent the pre-termination notice to Plaintiff's proper address. And while the certified pre-termination letter was returned to BCHD as "not deliverable as addressed," the regular (non-certified) pre-termination letter, addressed to the same apartment, was not returned. The reason Plaintiff did not receive the non-certified pre-termination letter during the relevant period is because she did not have a mail key and then was in the hospital. There is no evidence in the record that Defendant knew Plaintiff did not have a mail key or was in the hospital at the time it terminated her from the program. There is no evidence in the record that Defendant had alternate contact information for Plaintiff. Therefore, Plaintiff's legal theory is not applicable to this case.

B.      Abuse of discretion or arbitrary actions

Count II of the complaint alleges that "Defendant's termination was arbitrary and a violation of Plaintiff's due process rights" because "Defendant knew that Plaintiff was disabled and was pregnant at the time of admission to the program"; "Defendant also knew that Plaintiff's due date for her baby was around the end of August 2020"; and "Defendant also knew that Plaintiff never received the proposed notice of termination." Compl. ¶¶ 45-46. The Court has rejected the argument that Defendant knew Plaintiff did not receive notice before it terminated Plaintiff from the program. Regarding Plaintiff's remaining arguments, Plaintiff presents no admissible evidence on summary judgment that Defendant knew Plaintiff was disabled or pregnant such that it affected her receipt of the pre-termination notice.

In addition to the allegations in the complaint, Plaintiff's response contends that "Defendant's refusal to reconsider its final decision and allow Plaintiff an informal hearing—when it was aware Plaintiff had not received sufficient notice of the proposed action—was an abuse of discretion and constituted arbitrary action." Doc. 33 at 16. Plaintiff cites no authority in support of this argument. The Court is not aware of any authority that a "refusal to reconsider" is a violation of procedural due process.

Both the complaint and Plaintiff's summary judgment response refer to "due process" generically without indicating whether the claim is substantive or procedural. Even if the complaint were construed to bring a substantive due process claim based on "abuse of discretion" and "arbitrary action," the Court would grant summary judgment to Defendant. "The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). Neither of these strands were implicated by Defendant's refusal

10

to reconsider its termination decision. It is undisputed that Plaintiff was not eligible for the program because she was not receiving behavioral health treatment. No judicially recognized interpretation of the substantive due process clause of the United States Constitution required Defendant to reconsider its decision to terminate Plaintiff from its voucher program once Plaintiff became ineligible for the program because she was not receiving behavioral health treatment.

C. Municipal liability

Because there was no violation of Plaintiff's due process rights, the Court need not address the parties' arguments concerning Defendant's liability for any constitutional violations committed by Defendant's employees, or whether the Bernalillo County Housing Department as named in the complaint is a non-suable entity.

D. Attorney's fees

Defendant summarily requests "an award of attorney's fees and costs as may be allowed by law." Doc. 30 at 21. Defendant identifies no basis for this request. The Court denies it.

E. State-law claims

Defendant also moves for summary judgment on the claims against it under state law. Doc. 30 at 18-20. Plaintiff's complaint purports to bring direct claims based on violation of her state constitutional rights. Compl. ¶¶ 41, 48. Plaintiff's response clarifies that she did not intend to bring state-law claims except under the New Mexico Declaratory Judgment Act ("DJA"). Doc. 33 at 17. Plaintiff disclaims making any claims under the New Mexico Tort Claims Act. *Id.*

The Court has supplemental jurisdiction over the DJA claim pursuant to 28 U.S.C. § 1367. Doc. 1 at 2. Nonetheless, the Court may decline supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Tenth Circuit has indicated that "[w]hen all federal claims have been dismissed, the court may, *and*

11

*usually should*, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis added); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) (reversing a district court for failing to decline supplemental jurisdiction).

Here, the Court finds that it would be appropriate to decline supplemental jurisdiction over the state-law claim because the protections of the New Mexico constitution and the federal constitution are not necessarily identical. *State v. Gomez*, 1997-NMSC-006, ¶ 20, 932 P.2d 1, 7. Even where the parties have expended considerable effort in litigating the state-law claims in the federal forum, including conducting full discovery, it is appropriate to decline to exercise supplemental jurisdiction because that discovery can be used in state court. *Huntsinger v. Bd. of Dir. of E-470 Pub. Highway Auth.*, 35 F. App'x 749, 759-60 (10th Cir. 2002); *see, e.g.*, *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (affirming a district court decision to decline supplemental jurisdiction after granting summary judgment on the federal claims). Accordingly, the Court declines supplemental jurisdiction over the state-law DJA claim and remands it to state court.

## CONCLUSION

The Court GRANTS IN PART Defendant's Motion For Summary Judgment (Doc. 30). The Court grants summary judgment to Defendant on all federal claims of Plaintiff's complaint, and remands the state-law claims to state court. Each party will bear its own costs.

*/s/ Steve Yarbrough*
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent